CAROL J. LIVINGSTON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Livingston v. Commissioner
Docket No. 8792-74.
United States Tax Court
T.C. Memo 1976-211; 1976 Tax Ct. Memo LEXIS 190; 35 T.C.M. (CCH) 916; T.C.M. (RIA) 760211; June 30, 1976, Filed James O. Fergeson, Jr. and Michel G. Emmanuel, for the petitioner. Stuart B. Kalb, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined a deficiency in petitioner's Federal income tax for the calendar year 1972 in the amount of $194.66. The issues for decision are (1) whether petitioner is entitled to a dependency exemption deduction *191 for her mother, and (2) whether petitioner is entitled to compute her income tax as head of a household. The resolution of the first issue also disposes of the second. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioner, an unmarried individual who resided in St. Petersburg, Florida at the time of filing of the petition in this case, filed an individual income tax return for the calendar year 1972 with the Office of the Director, Internal Revenue Service Center, Southeast Region, Chamblee, Georgia. During 1972 petitioner was employed as a fulltime legal secretary in Tampa, Florida. She lived with her mother, Mrs. Bessie J. Livingston, in St. Petersburg, Florida in a house jointly owned by petitioner and her mother. The house was purchased in 1968 for approximately $23,000. Prior to 1967 petitioner had resided with her mother in a home in Baltimore County, Maryland owned by her mother. In 1967 petitioner and her mother decided to move to Florida. Mrs. Livingston sold her home in Baltimore County, Maryland for approximately $23,500. She deposited $8,000 of the proceeds of this sale in a joint savings account with her daugher, *192 Christine S. Arthur, deposited $8,000 in a joint savings account with petitioner at Loyola Federal Savings and Loan Association in Towson, Maryland, and kept the balance. Petitioner and her mother moved to Florida in the early part of 1967 and rented a home in order to look around the area before deciding upon a home to purchase. Petitioner was interested in building a home rather than purchasing one already built. In October 1967 petitioner and her mother found a lot which they liked in a subdivision where the builder would build the home after the prospective homeowner had purchased the lot and entered into a contract for construction of the house. Petitioner's mother placed a small deposit on the lot and shortly thereafter petitioner withdrew $500 from the account in the Loyola Federal Savings and Loan Association to pay on the lot. Petitioner and her mother then transferred the $7,410 balance in the Loyola Federal Savings and Loan Association to the First Federal Savings and Loan Association of St. Petersburg, Florida where they opened a joint savings account.[1]
*193 On October 11, 1967, petitioner withdrew $4,680.26 from the First Federal joint savings account to complete the purchase of the lot on which she and her mother planned to build a house. On the same day petitioner withdrew $2,237.48 from the First Federal joint savings account and made a deposit on the construction of the house. The construction of the house was completed and the transaction closed on February 2, 1968. Both petitioner and her mother, Mrs. Livingston, signed the mortgage and they took title to the house as joint tenants with the right of survivorship. The initial mortgage on the house was approximately $15,000. The monthly mortgage payments were $99 and by the end of 1972 the mortgage had been reduced by approximately $1,200 to $13,800. Petitioner has paid by check every monthly mortgage payment on the house since the closing of the transaction in February 1968.These checks have been drawn on an account which in 1969 she made joint with her mother. However, the only deposits ever made to this checking account of petitioner were deposits of petitioner's salary checks. The mortgage payments made by petitioner during 1972 totaled $1,188. In addition to the mortgage *194 payments petitioner paid for all other expenses in maintaining the home in 1972 including the following: Utilities
$ 810.00
Real estate taxes
461.21
House insurance
121.00
House maintenance
53.46
Lawn maintenance
105.00
$1,550.67 The mortgage, utilities, real estate taxes, and house payments were by checks drawn on the joint account in the name of petitioner and her mother to which petitioner deposited her salary checks. The fair rental value of the home jointly owned by petitioner and her mother was $230 per month or $2,760 per year during 1972. [2] During 1972 Mrs. Livingston received the following items of income: Social Security (including
Medicare)
$1,868
Veteran Widows Pension
639
Bank interest
4
$2,511 During 1972 the total income received by Mrs. Livingston was expended as follows: Food
$ 117
Clothing
400
Medical-Dental
130
Travel-Recreation
200
Life insurance
205
Automobile insurance
119
Medicare
68
Blue Cross/Blue Shield
50
Automobile expense
50
Newspaper
48
Automobile payments
604
Miscellaneous spending
520
$2,511
*195 During the first half of 1972 Mrs. Livingston owned and operated a 1961 Plymouth Valiant automobile. Sometime in the middle of 1972 Mrs. Livingston disposed of the Plymouth Valiant and purchased a 1972 Plymouth Scamp. She financed a portion of the purchase price of the 1972 Scamp. During 1972 Mrs. Livingston drove the two automobiles a total of approximately 7,000 miles. She and petitioner went on a trip in the Scamp to New England. On this trip they shared expenses for the oil and gas used in the automobile. The travel-recreation expenditures $200of made by Mrs. Livingston in 1972 included amounts she expended for gas and oil for the 1961 Plymouth Valiant automobile and the 1972 Plymouth Scamp automobile. The automobile expenses of $50 consisted of the cost of a license tag for the automobile, an inspection sticker, and repairs. During 1972 petitioner and Mrs. Livingston spent $1,300 for food. Of this amount $650 was spent for food consumed by Mrs. Livingston. Of the $650 Mrs. Livingston paid $117 from her own funds and petitioner paid $533 from her funds. The item of miscellaneous spending of $520 made by Mrs. Livingston in 1972 consisted of purchases of items such *196 as cigarettes, toiletries, payment for laundry, haircuts, and for gifts which Mrs. Livingston made to others and entertainment by Mrs. Livingston of others. The principal reason that Mrs. Livingston and petitioner took title to the home as joint tenants with the right of survivorship was so that in the case of petitioner's death the home would go to Mrs. Livingston without legal proceedings. However, another reason for their holding the home as joint tenants with the right of survivorship was that as a widow Mrs. Livingston qualified for an additional $500 homestead exemption, thereby reducing the taxes on the home. Petitioner on her Federal income tax return for 1972 claimed her mother as a dependent and therefore claimed a $750 deduction for a dependency exemption for her. Petitioner computed her income tax on the return as filed on the basis of being the head of a household. Respondent disallowed the deduction for the dependency exemption claimed by petitioner and computed her income on the basis of a single individual, explaining: Since the house in which you and your mother live is jointly owned by you, she is considered to have contributed one half the fair rental value *197 of the house to her support. Consequently, the amount she contributes to her support is over half her total support. Therefore, she does not qualify as your dependent. Respondent further explained that to qualify as the head of a household an unmarried individual would have to maintain a household for the year in which a relative (her mother) lived and the relative must also qualify as her dependent. OPINION Section 151, I.R.C. 1954, [3] provides for a deduction by a taxpayer in computing taxable income for a dependency exemption for each dependent as defined in section 152 whose gross income for the calendar year is less than $750. Section 152 defines the term "dependent" as certain individuals, including a taxpayer's mother, "over half of whose support, for the calendar year in which the taxable year of the taxpayer begins, was received from the taxpayer * * *." Here it is clear that petitioner's mother did not have $750 of income for the calendar year 1972 and the only issue is whether petitioner contributed over one-half of her support. Section 2(b) defines head of household. Under *198 this definition an individual shall be considered head of a household if she is not married at the close of the taxable year and maintains a household which constitutes the principal place of abode of her mother "if the taxpayer is entitled to a deduction for the taxable year for such * * * mother under section 151." Since it has been stipulated that petitioner is unmarried and it is clear from the record that she maintained the household in which she and her mother lived, the disposition of the issue as to petitioner's right to compute her tax for 1972 as head of a household is dependent upon whether she is entitled to claim her mother as a dependent under section 151 and section 152. The parties argue to what extent the disposition made by Mrs. Livingston of her own funds should be considered for her own support. Petitioner contends and respondent does not deny that the automobile payments and life insurance payments are not properly to be considered as support items and therefore the amount of support paid by Mrs. Livingston for herself without regard to lodging is not in excess of $1,702.Petitioner argues that this $1,702 should be further reduced by half of the $520 of miscellaneous *199 spending which went for gifts to others and entertainment by Mrs. Livingston of others. Although the record does not show any breakdown, petitioner argues that at least half of the $520 went for such purposes. Whether we accept petitioner's position or respondent's position that when an individual spends amounts to make gifts to others and to entertain others such expenditures are a part of her own support, is immaterial here. Neither this determination nor a determination of whether half the amounts expended by petitioner for utilities, house maintenance, and lawn maintenance should be considered as support by petitioner of Mrs. Livingston is of any consequence in resolving the issue in this case. If the one-half of the fair rental value of the house of $1,380 is to be considered a payment by petitioner for the support of her mother, then her minimum payment toward her mother's support is $1,913 ($1,380 plus $533 paid for food). This $1,913 is greater than the $1,702 which respondent contends Mrs. Livingston paid toward her own support. Therefore, if petitioner is to be considered as having provided Mrs. Livingston's lodging, she is entitled to the dependency exemption for Mrs. *200 Livingston. However, if because of the joint ownership of the house, Mrs. Livingston should be considered as having contributed one-half the rental value of $1,380 toward her own support, she contributed over onehalf her own support no matter how we resolve the other disputes of the parties. The $533 paid by petitioner for food for Mrs. Livingston plus $484.23 (one-half the cost of utilities, house maintenance, and lawn maintenance paid by petitioner) is $1,017.23 which is less than one-half of the fair rental value of the house. Ordinarily where a house is owned jointly by two people each owner is considered as having contributed one-half of the fair rental value of the house toward the support of the occupants of the house. Eva L. Lindberg,46 T.C. 243 (1966); Gilliam v. Commissioner,429 F. 2d 570 (4th Cir. 1970), affg. a Memorandum Opinion of this Court. Petitioner argues that this rule should not apply here since the parties considered the house in fact to belong to petitioner. Petitioner even argues that in effect the house did belong to petitioner since under Florida law where an individual pays for a piece of property intending it to *201 be totally his own and the property is taken in the name of another to hold solely for him, a resulting trust is created. In our view the evidence here is clear that Mrs. Livingston was not holding a bare legal title to the house for petitioner as is necessary for a resulting trust to arise. In discussing resulting trusts in Howell v. Fiore,210 So. 2d 253, 256 (Dist. Ct. of App. Fla., 1968) the Court stated: We are not unmindful of the strong presumption in favor of the correctness of deeds and other instruments as written and executed, and that this presumption of correctness would prevail unless the party who alleges that it does not express the truth overcomes the presumption and shows the contrary by satisfactory evidence which is clear, strong and convincing. * * * The evidence here shows that in fact as well as in form petitioner and Mrs. Livingston were joint owners of the house in which they lived. They were both liable on the mortgage. They wanted the joint ownership to exist to create the right of survivorship upon the death of either of them and also wanted Mrs. Livingston as a part owner to obtain the extra homestead exemption. As long as conditions *202 were amicable between mother and daughter no problem would arise as to who was responsible for the mortgage payments and other costs of maintaining the house. However, if some dispute were to arise, in our view Mrs. Livingston would be able to have her ownership in the house recognized as a legal matter. Considering all the facts, we conclude that the ownership here was not only in form but in substance joint. Since petitioner and her mother were joint owners of the house, each is considered to have furnished one-half of the fair rental value of the house for her own support.
We therefore conclude that petitioner is not entitled to the dependency exemption claimed for her mother and by reason of the fact that petitioner's mother was not her dependent within the meaning of section 151 petitioner is not entitled to compute her tax as head of a household in 1972. Decision will be entered for the respondent. Footnotes
1. The record is not clear as to when the $90 difference in $500 plus $7,410 and $8,000 was withdrawn from the Loyola Federal Savings and Loan Association account or who withdrew it. The record does show that from the time the joint savings account at Loyola Federal Savings and Loan Association in Towson, Maryland was opened until the time it was closed there were no additional deposits made to the account.↩
2. The parties have made the following stipulation on the fair rental value of the home: The respondent has determined that for purposes of determining the amount of support furnished by or for Bessie J. Livingston in the form of lodging, the fair rental value of the lodging should be used in lieu of actual household expenses (including mortgage payments). The petitioner disagrees with this determination.↩
3. All statutory references are to the Internal Revenue Code of 1954, as amended.↩